## The Echo, etc.

*(District Court, S. D. New York.* January 21, 1884.

1. Collision—Negligence—Burden of Proof—Custom.

   Where a boat properly moored receives damage from another colliding with her, the latter is presumptively liable for the damages, and the burden of proof is upon her to clear herself from fault.

2. Same—Line Across Channel.

   The temporary use of a line or warp stretched across a narrow stream in the mooring and handling of vessels is not necessarily unlawful.

3. Same—Custom.

   Where a tug-boat coming down Newtown creek discovered such a line ahead of her, and upon backing to avoid it, ran into the libelant's boat, *held*, that the burden of proof was upon the tug-boat to show that the line was used improperly, or that any proper signals were omitted; *held*, *also*, that in view of the

local usage the tug-boat should have been more cautious in her approach, and kept further away from the libelant's boat, and was therefore chargeable with the damage.

Collision.

*Beebe, Wilcox & Hobbs*, for libelant.

*Edwin G. Davis*, for claimant.

BROWN, J. On December 21, 1880, the libelant's canal-boat Van Vleet, laden with coal, was lying at the Long Island railroad dock, in Newtown creek, a short distance above the bridge, moored outside of two other canal-boats. At dusk, about 5 P. M. of that day, the weather being clear, the steam-tug Echo was coming down the creek on a course which would carry her about 25 feet outside of the Van Vleet. When she had come within about 30 feet of the stern of the Van Vleet her pilot saw a line stretched across the creek a short distance below the canal-boat, running from a schooner on one side to the opposite shore, and ranging about 10 or 12 feet above the water. The pilot immediately stopped and reversed his propeller to avoid running into the line. In doing so, the Echo not being entirely manageable in backing, swung her bows towards the canal boat and inflicted a blow, causing some damage, for which this libel was filed. The owner of the Echo subsequently agreed to pay for certain repairs, but the terms of the agreement being afterwards a subject of dispute, no settlement was effected.

The canal-boat being moored at a proper place, and no fault chargeable against her, she is presumptively entitled to the damages inflicted by another boat colliding with her. *New York, etc.,* v. *Rumball,* 21 How. 385; *The Bridgeport,* 7 Blatchf. 361; *Pierce* v. *Lang,* 1 Low. 65; *The Lincoln,* Id. 46; *The John Adams,* 1 Cliff. 404, 413; *The City of New York,* 8 Blatchf. 194; *The Rockaway, ante,* 449. On the part of the Echo, it is urged that she ought not to be held liable, on the ground that the stretching of a line across the creek, a thoroughfare for vessels, was the real wrong which caused the collision; that there was no previous notice given of the existence of the line, available to the Echo; that it was seen as soon as it could be perceived; and that there was no subsequent fault in the handling of the tug. If the evidence sustained this view a different question might be presented; but it is a familiar fact, and it was proved on the trial, that the use of lines stretched across the creek was a usual and customary thing for the purpose of handling and moving vessels of a considerable size which go above the bridge, and that the temporary use of such lines is necessary for that purpose, in that narrow channel-way. 1 Pars. Shipp. & Adm. 547. It cannot be assumed, therefore, that this line was wrongfully across the stream at the moment when the pilot of the Echo discovered it, and no evidence was given showing the omission of any customary signals. The burden of proof to show that the line was wrongfully there was upon the Echo. Nothing was proved, however, beyond the bare fact of the

line being there, and, under the custom proved, that is not presumptively unlawful. The custom of stretching lines across the stream for this purpose imposes the duty upon tugs navigating that part of the creek to observe carefully, and to regulate their speed and distance from other craft with reference to such a contingency. There was plenty of room for the tug to have gone further from the canal-boat. The pilot of the Echo had not been accustomed to navigate in Newtown creek, and the accident in question, doubtless, arose from his want of familiarity with the usage of stretching lines across the creek. This does not exempt the Echo from responsibility, and the defense in this respect cannot be sustained. Nor upon the evidence of the pilot himself can I sustain the claim that the blow was a light one, or such only as may rightfully occur in the ordinary rubbing of boats passing along-side each other. *The Chas. R. Stone,* 9 Ben. 182. It was plainly a considerable blow, and did not arise in the course of the ordinary, usual, and prudent handling of such boats.

I see no reason in this case to doubt the fairness of the bill presented for the repairs, detention, and expenses of the vessel. These are proved to amount to $97, which, with interest to this date, makes $115, for which the libelant is entitled to a decree, with costs.

---

## THE SWAN.

### (*District Court, S. D. New York.* February 1, 1884.)

1. SHIPPING—OBSTRUCTION TO NAVIGATION—ROPE ACROSS CHANNEL—DAMAGE—PROXIMATE CAUSE.

    A rope stretched across the archway of a bridge and over the principal channel of a navigable river, and remaining 24 hours, is an unlawful obstruction of navigation.

2. SAME—WHEN JUSTIFIABLE.

    Wherever such rope or warp may be used, it is justifiable only for a temporary purpose, those who use it making provision for loosening it to allow vessels to pass, and giving timely notice of its existence.

3. SAME—CASE STATED.

    Where a rope was stretched across the west archway of High bridge, for the purpose of keeping a canal-boat a few feet distant from the abutment of the bridge where there were sunken spiles, and the boat might have been breasted off equally well by the use of planks upon the wharf, and the passenger steamer S., after landing within 150 feet of the abutment, proceeded with the flood-tide through the main channel, no notice being given of the rope which was under the water in the middle, and visible only where the ends came from beneath the surface, and those on the boat being unable to loosen it at once, and in the strong tide it being dangerous for the S. to remain in contact with the rope, *held,* that the use of the line in this case was unnecessary and was an unlawful obstruction; that the cutting of the rope by those on the steamer was lawful; and that the steamer was not liable for any damage subsequently sustained by the canal-boat. *Held, also,* upon the facts, that the damage to the canal-boat from settling upon the spiles arose after a considerable interval, during which the boat might have been breasted off from the spiles; that the cutting of the line was not the proximate cause of the injury; and that on these grounds also the libel should be dismissed.