### THE J. G. LINDAUER.

(District Court, W. D. Washington, N. D. December 31, 1907.)

#### No. 3,443.

1. Shipping—Negligent Obstruction of Slip by Mooring Line—Liability for Damages Caused.

A schooner lying diagonally in a slip between two wharves, with her bow against one wharf, in order to prevent her stern from chafing against another vessel which she overlapped, ran a hawser across the slip to the opposite wharf and permitted it to remain at night unmarked by lights. Libelant's tug, entering the slip after dark to go to her accustomed berth, struck such hawser and was injured, and her captain, who was on the deck, received serious injury. *Held*, that the hawser was an unlawful obstruction to navigation, and, being a part of the equipment of the schooner, she was liable in rem for the injuries; that the tug was not debarred from recovery because of her failure to signal her approach to the slip which did not apparently contribute to the casualty, since there was no person on the schooner in a position to have removed the hawser, or to have given warning of its presence.

2. Damages—Personal Injury—Amount of Award.

The captain of a tug who was injured through the negligence of another vessel, having his jaw broken and his teeth knocked out, by reason of which he suffered great pain, was disabled from working for 10 months, put to large expense and permanently injured and disfigured, awarded damages against the offending vessel in the sum of $4,500.

In Admiralty. Suit in rem to recover damages for injuries to a steam tug caused by coming in contact with a mooring line extended across a slip between two wharves, and for personal injuries suffered by the captain of the tug. Decree for libelants.

Fairchild & Bruce, for libelants.

Austin E. Griffiths and Roberts & Hulbert, for respondents.

HANFORD, District Judge. Two libels are included in this case, one by the captain of the steam tug Carlyle to recover damages for personal injuries which he suffered, and the other by the owner for damages to the tug, caused by a hawser stretched across a slip between two wharves in Bellingham Bay, known, respectively, as the "Sehome" dock and the "Bellingham Bay Improvement Company's" dock. On the day of the accident the steam schooner G. C. Lindauer arrived at Bellingham to receive a cargo of lumber, and was assign-

ed to a berth in the slip next to the improvement company's dock. Two other vessels, the steamer Meteor and the schooner A. M. Baxter, were occupying berths on the same side of the slip, and receiving cargoes of lumber; the Baxter's position being next to and shoreward from the Meteor and the berth assigned to the Lindauer being shoreward from the Baxter. For lack of sufficient space to accommodate her length, so that she could lie snug to the wharf, the Lindauer was moored obliquely with her bow against the wharf, and the stern lapping beyond the Baxter's bow. To hold her so that the two vessels would not chafe against each other, a mooring hawser was taken from the Lindauer's stern across the slip, and made fast to a pile on the Sehome dock, and, notwithstanding a warning shouted to the men on the ship from the Sehome dock by the man in charge there, to the effect that the hawser was an improper obstruction, as other vessels would be coming into the slip, it was left in that position without a light suspended upon it until the accident happened. The Carlyle was operated as a jobbing boat on the bay, and she was usually tied up at night to the Sehome dock in shallow water near the shore, and it was necessary for her to go inside of the line stretched across the slip in order to come to her berth. Her owner paid for use of the berth a monthly rental. She is a small tugboat, having engines of 65 horse power. Her deck forward of the pilot house is about 15 feet in length. She has a mast for carrying lights supported by wire rope stays. She came into the slip for the purpose of tying up at her usual place a few minutes before 8 o'clock on the evening of March 29, 1907. It was then quite dark. With her engine stopped, and moving by the momentum of her headway, she came against the hawser—that is to say, her stays came in contact with the hawser—with sufficient force to break her mast. Her captain was on the deck, giving directions to her owner, who was in the pilot house, steering the boat and operating her engine room bells. Two fragments of the broken mast fell to the deck, and the stays were twisted and fouled with the hawser which was cut to release the boat. Neither the captain nor any person on the tug knew that the hawser had been placed across the slip, and it was not seen until the moment of the crash. The captain was struck on his body and face, and knocked senseless by a piece of the broken mast, or some part of the stays. His jaw was fractured in three places, all of his upper teeth were knocked out or broken, and his right arm and body were bruised. Besides the pain which he suffered, he was incapacitated for work several months, and his expenses for surgical treatment and dentistry amount to several hundred dollars. His face is permanently disfigured, and it will always be difficult, if not impossible, for him to masticate food.

It is the opinion of the court that the hawser was an unlawful obstruction of navigation; and, it being a part of the equipment of the ship, she is to be regarded as a guilty thing, and perpetrator of a wrong, and subject to a lien for the consequential damages. I do not find in the evidence any support to the charge of negligence made against the libelants in the respondent's answer. It is true that the evidence does not show affirmatively that the tug blew her whistle or

gave warning of her coming into the slip, but her failure in that regard, if a fault, did not contribute to the casualty, for the reason that there was no person in a position to have given her a responsive warning of danger ahead, or to have removed the hawser, and it is not probable that her whistle would have received any consideration on board of the Lindauer different from the warning which was given by the man in charge of the Sehome dock. The captain and first mate of the Lindauer did not hear the warning given by Mr. Henderson, the man in charge of that dock, but it is not shown that others of her crew did not hear him, and, if the captain had observed the ordinary rules of good manners, he would have requested permission to make his mooring line fast to the Sehome dock before presuming to take that privilege, and, if he had not been negligent in that particular, he would certainly have been told that it was improper for him to obstruct the passageway between the wharves. A sensible man should have known that much without being told. Therefore it may be fairly assumed that the Carlyle's whistle would not have been heeded on the Lindauer. In maritime law a fault which does not contribute to the production to an injury is not ground for a division of damages. The Blue Jacket, 144 U. S. 371, 12 Sup. Ct. 711, 36 L. Ed. 469. Under the circumstances, failure to see the hawser was not a fault. The light on the dock might have revealed it to a person who was looking for it, but the libelants had no reason to expect anything so unusual, in such a place, as an obstruction to the passage of the vessel suspended in the air, and there was not sufficient light to make it plainly visible. It was not unlawful nor negligence to permit a man, who was not licensed to perform the functions of an officer of a steam vessel, to steer the tug and operate her signal bells. The captain was on duty and in a proper position, and he performed the duties of pilot and lookout.

Upon the evidence I find that the sum of $100 is a reasonable estimate of the damages to the tug, and that amount will be awarded to her owner. I consider that the captain is entitled to a pension to solace him for the permanent disfigurement of his features and his impaired ability to enjoy life. The amount of an annuity purchasable by one payment of $2,000 I consider to be a reasonable allowance. As captain of the Carlyle he was earning $100 per month. His time was worth that much, and 10 months is a conservative estimate of the lost time to be compensated for. I also allow him $1,500 as compensation for pain and expenses, making the total amount of damages awarded to him $4,500. Both libelants will be entitled to legal interest on the sums awarded from the date of the decree to be entered until paid, and their taxable costs.