**TRUELSON et al. v. WHITNEY & BODDEN SHIPPING CO., Inc.***

(Circuit Court of Appeals, Fifth Circuit. December 28, 1925. Rehearing Denied January 19, 1926.)

No. 4567.

1. **Shipping ⬤═86(2)—Evidence held to establish contributory negligence barring recovery for death of one knocked from launch by cables across slip.**

In action for death of one knocked from launch by cables stretched across slip, evidence *held* to establish contributory negligence barring recovery under Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 4698, 4699, and article 4694 as amended by Acts 1921, c. 109, § 1 (Vernon's Ann. Civ. St. Supp. Tex. 1922, art. 4694).

2. **Death ⬤═23—Contributory negligence complete defense to action under Texas statute.**

Contributory negligence is a complete defense to an action for damages for wrongful death under Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 4698, 4699, and article 4694 as amended by Acts 1921, c. 109, § 1 (Vernon's Ann. Civ. St. Supp. Tex. 1922, art. 4694).

*Certiorari denied 46 S. Ct. 474, 70 L. Ed. ——.

3. **Courts ⬤═371(4)—When cause of action for death is asserted in admiralty court, it is subject to defenses available under jurisprudence of state whose statute gives right of action.**

When cause of action for death is asserted in admiralty court, it is subject to same defenses as are available under jurisprudence of state whose statute gives right of action.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Suit by Nellie Truelson and others against the Whitney & Bodden Shipping Company, Inc. Decree for defendant, and plaintiffs appeal. Affirmed.

C. W. Howth and M. G. Adams, both of Beaumont, Tex. (Lamar Hart, of Beaumont, Tex., on the brief), for appellants.

F. D. Minor, of Beaumont, Tex., Palmer Pillans and Alexis T. Gresham, both of Mobile, Ala., and Samuel C. Lipscomb, of Beaumont, Tex., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from a decree rejecting a claim of the appellants, the widow and minor daughter of J. H. Truelson, that the brigantine Geneva, by reason of negligence alleged, was liable in damages for the latter's death; the appellants alleging that deceased's death occurred without fault or negligence on his part. Those allegations were put in issue. [1] The circumstances of Truelson's death are indicated by the following statement: The deceased and one Nelson operated a launch in the Port Arthur canal and slips thereof in the business of selling cold drinks and tobacco to seamen on vessels there docked. Several days prior to August 31, 1923, the Geneva arrived at Port Arthur from a foreign port, and, for the purpose of taking on a cargo of timber, was docked in a slip which was dredged at the expense of a railroad company, the docks on each side of that slip being owned by that company, the slip being about 250 feet wide where the Geneva was docked. The health officers in charge required the Geneva, the port side of which was next to the dock, to be "breasted off" the dock the distance of about 4 feet in order to keep infected rats from reaching shore. Permission was obtained from the harbor master to effect this result by stretching hawsers or cables from the vessel to each side of the slip. Two cables on the starboard side extended across

the slip and were fastened to ring bolts on the wharf on the opposite side of the slip. Those cables when stretched were, respectively, about 12 and about 14 or 15 feet from the water where they left the vessel and about 6 feet from the water on the opposite side of the slip. They sagged somewhat because it was not practicable to pull them taut enough to make them straight. It was customary for vessels docked in that slip to be "breasted off" in the way adopted by the Geneva. Each day while the Geneva was in the slip Nelson and Truelson in their launch several times went in and out of the slip, going under lines stretched across it from the Geneva and other vessels. They did so several times on August 31. They went out of the slip without mishap at about 7 o'clock in the evening of that day. Some time later that evening when "it was about dusk," while the launch was going into the slip, the top of it, which was about 6 feet above the water, came in contact with the Geneva's first cable in the direction from which the launch was coming, whereupon the deceased went forward towards that cable and, either when attempting to release it or when going towards it after it had been released, was struck by it and knocked from the launch and drowned. Ordinarily the launch was operated only in the daytime. It had no lights on it. The night of the drowning was the only time it was operated after 5 o'clock in the afternoon. It was not practicable to have lights on the stretched cables at night, as there were no electric lights in the locality, and, because of oil on the water in the slip, the use of oil burning lamps or lanterns on the cables was unsafe and not permitted. The evidence was conflicting as to whether at the time deceased came to his death the cables were or were not in the same condition in which they were when the launch went under them at about 7 o'clock the same evening. To say the least, the evidence did not convincingly show that the cable with which the top of the launch collided was then substantially nearer the water than it was when the launch on its next preceding trip out of the slip passed the Geneva safely. We think

that by a preponderance of the evidence it was shown that the collision with the cable and the deceased's death would not have occurred but for the negligence of himself and Nelson in failing to keep the launch near enough to the Geneva to pass under the cables with safety, there being ample room to do so. It cannot fairly be doubted that the peril would have been avoided if the deceased had been exercising the care called for by attending circumstances known to him.

[2, 3] In view of the purposes for which the slip was customarily used, of deceased's familiarity with conditions existing therein, and the absence of any reason for those in charge of the Geneva to expect the launch to be operated in the slip at night, it is questionable whether the Geneva, by having cables stretched across the slip as they were, was chargeable with negligence with respect to the launch or the operators of it. The Echo (D. C.) 19 F. 453; The J. G. Lindauer (D. C.) 158 F. 449. But the appellants were not entitled to recover even if the Geneva was not free from fault in doing so. The claim asserted was based on the Texas statute giving a right of action for wrongfully causing the death of a person. Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 4698, 4699, and article 4694 as amended by Acts 1921, c. 109, § 1 (Vernon's Ann. Civ. St. Supp. Tex. 1922, art. 4694). Contributory negligence of the deceased is a complete defense to such an action. Barnes v. Honey Grove Natatorium Co. (Tex. Civ. App.) 228 S. W. 354. When such a cause of action is asserted in an admiralty court, it is subject to the same defenses which are open to a defendant under the jurisprudence of the state whose statute gives the right of action. Quinette v. Bisso, 136 F. 825, 69 C. C. A. 503, 5 L. R. A. (N. S.) 303; O'Brien v. Luckenbach S. S. Co. (C. C. A.) 293 F. 170. We conclude that the appellants were not entitled to the relief sought because the evidence adduced showed that the deceased's failure, under conditions known to him, to exercise ordinary care for his own safety, proximately contributed to his death.

The decree is affirmed.