**GLEN RIDGE I CONDOMINIUMS, LTD., et al., Appellants,**

**v.**

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, et al., Appellees.**

**No. 05-85-00873-CV.**

Court of Appeals of Texas, Dallas.

Dec. 30, 1986.

Supplemental Opinion on Denial of Rehearing June 25, 1987.

Rehearing Denied July 28, 1987.

---

Robert H. Renneker, Anthony A. Petrocchi, D. Ronald Reneker, Dallas, for appellants.

James E. Doyle, T. Michael Wall, John D. Roady, Houston, David M. Taylor, Dallas, for appellees.

Before AKIN, DEVANY and SCALES, JJ.

## ON MOTION FOR REHEARING

AKIN, Justice.

The issue dispositive of this appeal is whether Congress may, consistent with the third article of the federal constitution, preclude the judicial branch from "restrain[ing] or affect[ing] the exercise of powers or functions of a conservator or receiver" of a federally insured savings and loan association. Because doing so in effect confers upon an agency of the executive branch those powers constitutionally committed to the judiciary, we hold that it may not.

Glen Ridge I Condominiums and others obtained financing from Empire Savings and Loan for real estate investment in the "I-30 corridor" of Dallas County. Glen Ridge appeals the trial court's dismissal of its suit to enjoin the Federal Savings and Loan Insurance Corporation, acting as receiver of Empire, from foreclosing on its property. After consideration of Glen Ridge's motion for rehearing, we agree that the trial court erred in dismissing the suit for want of jurisdiction. Consequently, we withdraw our former opinion, reverse the judgment of the trial court, and remand for consideration of Glen Ridge's claims under state law.

When Empire became insolvent, the Federal Home Loan Bank Board appointed FSLIC as receiver of Empire and ordered FSLIC to liquidate Empire's assets. FSLIC then posted the property of Glen Ridge for foreclosure pursuant to deeds of trust given to Empire to secure financing for land acquisition and condominium construction.

Glen Ridge sued FSLIC, Empire, and the various trustees in state court seeking cancellation of the deeds of trust, damages, injunctive relief, and attorney's fees. FSLIC moved to dismiss, asserting that the trial court lacked jurisdiction of the subject matter by virtue of section 1464(d)(6)(C) of title twelve of the United States Code, which provides that "no court may ... restrain or affect the exercise of powers or functions of a receiver." The trial court agreed and dismissed the suit. Glen Ridge asserts in this appeal that this section violates the constitutional scheme of separated powers to the extent that it vests exclusive power in an administrative agency to adjudicate rights created by state common law without the consent of the litigants and

subject only to appellate review under the federal Administrative Procedure Act.

*Northern Pipeline Prohibits FSLIC Adjudication*

Article III, section 1, of the Constitution of the United States provides:

The judicial power of the United States, shall be vested ... in such inferior courts as the Congress may from time to time ordain and establish. The Judges ... shall hold their offices during good Behavior, and shall, at stated times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

As an element of the constitutional system of checks and balances, these provisions were designed to give federal judges maximum independence from the executive or legislative branches of the government. *United States v. Quarles,* 350 U.S. 11, 16, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). These provisions have produced confusion and controversy, and have never been fully defined. *Glidden Company v. Zdanok,* 370 U.S. 530, 533, 82 S.Ct. 1459, 1463, 8 L.Ed.2d 671 (1962); *see Redish, Legislative Courts, Administrative Agencies, and the Northern Pipeline Decision,* 1983 Duke L.J. 197 (1982); *see also 1616 Reminc Limited Partnership v. Atchison & Keller Company,* 704 F.2d 1313, 1316 (4th Cir.1983). We have, however, found guidance in two decisions of the United States Supreme Court.

In *Northern Pipeline Construction Co. v. Marathon Pipeline Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the bankrupt Northern Pipeline sued Marathon in federal bankruptcy court for breach of contract, breach of warranty, misrepresentation, coercion, and duress. Marathon moved for dismissal on the ground that the Bankruptcy Act of 1978 unconstitutionally conferred article III judicial power upon bankruptcy judges who lacked the life tenure and salary protections of article III. The Supreme Court agreed with Marathon and rejected the government's contention that article I endowed Congress with sufficient authority for the bankruptcy court's jurisdiction of Northern Pipeline's claims.

The court's plurality opinion identified three categories of legislative courts which could validly exercise parts of the federal judicial power. These were the territorial courts,[1] courts-martial, and courts or administrative agencies which adjudicate public rights. 458 U.S. at 64–67, 102 S.Ct. at 2867–69. Bankruptcy courts were clearly neither territorial courts nor courts-martial. Thus, the court was squarely faced with the question of whether bankruptcy courts only adjudicated questions concerning public rights.

Public rights arise, at a minimum, between the government and persons subject to its authority as a result of constitutional or legislative provisions and are typically found in connection with the exercise of congressional power granted by constitutional provisions concerning interstate and foreign commerce, taxation, immigration, the public lands, public health, the post office, veterans, and debts of customs agents. 458 U.S. at 68, 70, 102 S.Ct. at 2871; *Crowell v. Benson,* 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932). Other public rights derive from congressionally-created benefits, such as the restructuring of debtor-creditor relationships, radio station licenses, pilot licenses, and certifications for common carriers. 458 U.S. at 71, 102 S.Ct. at 2871. Public rights contrast with such state-created private rights as the right to recover contract damages. 458 U.S. at 71–72, 102 S.Ct. at 2871–72.

The plurality decided that Northern Pipeline's right to recover contract damages from Marathon was not a public right, but a private right that must be adjudicated by an article III court. Justice Rehnquist's concurrence stated that the lawsuit sought recovery under counts which were traditionally actions at common law and which could not be adjudicated over Marathon's objection by a non-article III tribunal. Both opinions held that the Bankruptcy Act, in purporting to grant jurisdiction of such actions to the bankruptcy courts, was unconstitutional. 458 U.S. at 76, 87, 90, 102 S.Ct. at 2874, 2880–81.

---

**1.** Courts for territories outside the states and for the District of Columbia.

FSLIC contends that the issues in this lawsuit concern its public right to liquidate Empire's assets and thereby recoup the insurance payments it has made to depositors of Empire. This contention overlooks the fact that, even though the government is currently a party, the substantive rights at issue arose between two private parties. Furthermore, the substantive rights in issue here arose out of transactions conducted according to state law and not out of constitutional or legislative provisions governing FSLIC.

FSLIC, as receiver of a state-chartered savings and loan has the right to liquidate the latter's assets. 12 U.S.C. §§ 1729(b)(1), (c)(1); 1464(d)(11). FHLBB regulations provide only that FSLIC may "exercise all rights and powers of such institution ... including ... [those arising] under any ... deed of trust." 12 C.F.R. § 569(a)(6). This regulation provides FSLIC with no other or different rights than those arising under state law, and obtained by Empire under the deeds of trust. These rights had already vested before FSLIC became involved. Consequently, the rights did not arise between FSLIC and Glen Ridge under federal statutory law, but between Empire and Glen Ridge under the laws of this state.

Indeed, Glen Ridge does not contest FSLIC's right to liquidate these assets validly owned by Empire, and thereby recoup insurance payments, but rather it challenges the validity of Empire's claims to certain assets. Since the determination of these claims are governed by state-created rights in the deeds of trust, this lawsuit does not concern FSLIC's public right to liquidate assets but instead concerns traditional common law remedies. Consequently, federal jurisdiction over this lawsuit is proper only in an article III court, and the grant of this jurisdiction to a non-article III body by section 1464(d)(6)(c) is unconstitutional. It follows that the state court, exercing its concurrent jurisdiction, erred in dismissing the suit.

*Thomas Analysis Does Not Alter Unconstitutionality*

This conclusion is further supported by the holding in *Thomas v. Union Carbide*

*Agricultural Products, Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). The United States Supreme Court there held that article III did not prohibit Congress from granting a non-article III body jurisdiction over disputes among participants in a pesticide registration program, conducted by the Environmental Portection Agency pursuant to the Federal Insecticide, Fungicide and Rodenticide Act. 105 S.Ct. at 3328. Under the Act, manufacturers were required to submit research data for EPA review before registration. Manufacturers of pesticides similar to those previously registered were allowed to use research data that had been previously filed, provided that they compensated the original registrant for such use. Disputes over the amount of compensation were referred to, and decided by, arbitrators rather than article III courts.

In *Thomas,* the Court noted that, although the dispute was between private parties, it arose from a scheme that constituted a "public use" and bore many of the characteristics of a public right. The Court also pointed out that the dispute arose within the confines of a complex regulatory scheme to allocate costs and benefits among voluntary participants in the program and concerned a highly technical field peculiarly suited to specialized administrative action. 105 S.Ct. at 3337-8. Stressing that the right of FIFRA participants to use another participant's trade secrets and the latter's right to compensation for such use arose only in connection with the unique and complex scheme of FIFRA regulation, the court concluded that:

> Our holding is limited to the proposition that Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.

105 S.Ct. at 3340.

FSLIC argues that its right to collect and liquidate assets of a failed savings and loan

are so closely integrated into the FHLBB regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the article III judiciary. Likewise, FSLIC contends that the right of Glen Ridge to enjoin foreclosure and rescind the underlying debts is appropriate for agency resolution because FSLIC's claims-resolution process is an integral part of its recoupment of insurance payments from debtors of the failed savings and loan. Because resolution of the dispute between Glen Ridge and FSLIC occurs outside the basic fabric of the FHLBB regulatory scheme, we cannot agree.

FHLBB regulations weave a complex network of provisions around most aspects of FSLIC receiverships. For instance, the Code of Federal Regulations contains eight pages of rules and forty-six factual examples concerning FSLIC determination of claims to deposit insurance. *See* 12 C.F.R. § 564. Similarly, the rules for determining the priority of third-party creditors of the failed savings and loan and prescribing FSLIC actions with respect to the underlying debts are extensive. 12 C.F.R. § 569(a)(7), (8). In these areas, and others such as the sale and assumption of a failed thrift to another savings and loan, FSLIC operates a complex regulatory scheme in a highly technical field, as required by the *Thomas* holding.

The regulations governing FSLIC recovery of debts held under deeds of trust and defenses to such recovery contrast markedly with the comprehensive provisions outlined above. All that is said with respect to such recovery and defenses is:

> [The] receiver shall collect all obligations and money due such insured institution, and may ... institute ... actions, suits, or other proceedings ... [and] exercise all rights and powers of such institution ... including ... power under any ... deed of trust....

12 C.F.R. § 569(a)(6). No provisions set forth substantive rules or guidelines for resolving Glen Ridge's claims. Unlike *Thomas*, these regulations give no rights or remedies to Glen Ridge, nor do they provide substitutes for those rights or rem-

edies already held by Glen Ridge or Empire under Texas law. FHLBB regulations concerning the dispute with Glen Ridge fall short of the unique, complex, and highly technical regulatory scheme that underlies *Thomas*. Thus, none of the rights here in issue are so closely integrated into the FHLBB regulatory process that they are appropriate for agency resolution with only limited involvement by the judiciary.

*Interpretation of Northern Pipeline by Thomas*

In discussing *Northern Pipeline*, the *Thomas* court stated:

> The Court's holding in that case establishes only that Congress may not vest in a non-article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.

105 S.Ct. at 3335. FSLIC contends that its adjudication of Glen Ridge's contract claims avoids article III infirmity because FSLIC cannot render final judgment or issue binding orders and because it is subject to more than ordinary appellate review. Because FSLIC action on adjudication is equivalent to final judgment and because FSLIC is subject to less than ordinary appellate review, we cannot agree.

FSLIC may do all things necessary to collect obligations owed to the failed thrift. 12 U.S.C. § 1729(d). If no court may take jurisdiction of any dispute arising out of efforts to collect, FSLIC action will be self-executing. Upon adjudicating Glen Ridge's claims adversely to Glen Ridge, section 1729(d) allows FSLIC to sell the contested properties without any final judgment or binding orders of a court. The sale will effectively determine title and all parties will be bound thereby. Accordingly, the difference between FSLIC's final determination upon adjudicating Glen Ridge's claims and a court's judgment of foreclosure and order of sale will be in name and form only. Such a difference is insufficient as a basis for deciding whether article III requires involvement by the federal judiciary. *Thomas*, 105 S.Ct. at 3336. We

hold that, for purposes of applying *Northern Pipeline* as interpreted by *Thomas,* FSLIC's final determination on adjudication is a final judgment and binding order.

FSLIC is not subject to ordinary appellate review, but instead the review provided by the federal Administrative Procedure Act is less than ordinary appellate review. A reviewing court may reverse FSLIC only if an adjudication is not supported by substantial evidence. 5 U.S.C. § 706. If a finding is supported by substantial evidence, it is final and conclusive. *Phillips Construction Co. v. United States,* 394 F.2d 834, 836 (Ct.Cl.1986). Substantial evidence is a narrow standard of review when contrasted to ordinary appellate review. *Vigil v. Post Office Department of the United States,* 406 F.2d 921, 924 (10th Cir. 1969). Under ordinary appellate review, the reviewing court may reverse if a finding is contrary to the great weight and preponderance of the evidence. *United States v. Siemans America,* 653 F.2d 471, 477 (C.C.P.A.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982), *Picken-Bond Construction Company v. United Brotherhood of Carpenters and Joiners of America,* 586 F.2d 1234, 1240 (8th Cir.1978); *accord Ridco, Inc. v. Sexton,* 623 S.W.2d 792, 796 (Tex.Civ.App.— Fort Worth 1981, no writ). Likewise, a finding may be reversed where the finding of fact is clearly erroneous. Fed.R.Civ.P. 52. Substantial evidence is something less than the weight of the evidence, and consequently the fact-finder will be sustained by less evidence than under a weight-of-the-evidence standard. *Refrigerated Transport Co. v. Interstate Commerce Commission,* 663 F.2d 528, 531 (5th Cir.1981). The substantial evidence standard restricts an appellate court more than the clearly erroneous standard and the fact finder will accordingly be sustained on less evidence under the substantial evidence standard. *SSIH Equipment S.A. v. United States International Trade Commission,* 718 F.2d 365, 382 (Fed.Cir.1983). Since it is more difficult for an appellate court to reverse an administrative agency under the substantial evidence standard than under ordinary appellate review, FSLIC determinations are subject to less than ordinary appellate review.

## FINALITY OF AGENCY ACTION

Arguing that Glen Ridge is required to exhaust administrative remedies before seeking judicial review, FSLIC maintains that we should defer consideration of this case until completion of FSLIC adjudication and then step aside for review in a federal district court pursuant to the federal Administrative Procedure Act. Because FSLIC action in the trial court was final agency action for purposes of judicial review, we cannot agree.

Under the APA, judicial review is available from final agency action. 5 U.S.C. § 704. Whether final agency action has occurred is determined pragmatically. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Finality is viewed flexibly where all parties are before the court and a judicially resolvable legal issue is presented. *Columbia Broadcasting System v. United States,* 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563 (1942).

■ For purposes of raising the crucial issue concerning the constitutionality of FSLIC's exclusive authority to adjudicate its dispute with Glen Ridge, finality could occur either from Glen Ridge's proceeding administratively and appealing the result, or proceeding in a court and appealing a court's dismissal on jurisdictional grounds. The deprivation of judicial adjudication is the same in either case. We hold that the grant of FSLIC's motion to dismiss the state-court action was the equivalent of final agency action and authorized constitutional review. Because we have concurrent jurisdiction with the federal district courts concerning violations of the United States Constitution, *Ex parte Royal,* 117 U.S. 241, 247–248, 6 S.Ct. 734, 737–38, 29 L.Ed. 868 (1886); *Snypp v. State of Ohio,* 70 F.2d 535, 537 (6th Cir.1934), *cert. denied,* 293 U.S. 563, 55 S.Ct. 74, 79 L.Ed. 663 (1934), the appeal of Glen Ridge is properly before us.

## STATE LAW AS THE FEDERAL RULE OF DECISION

FSLIC cites *Northern Pipeline* and *Thomas* for the proposition that non-article III adjudication is warranted whenever federal law supplies the rule of decision. According to FSLIC, whenever a federal court applies choice-of-law doctrines to choose federal law, a federal rule of decision resolves the controversy, despite the possibility that the federal law may adopt a state common-law rule rather than fashion a special federal rule. FSLIC concludes that a federal court would choose federal law as the rule-of-decision in this case and that, accordingly, Congress may assign the case to the FSLIC instead of an article III court. We do not agree.

To hold that the mere act of choosing federal law under choice-of-law doctrines creates a federal rule of decision for article III purposes, where the actual substantive law remains the same as the common law of the state, would place form over substance. The Supreme Court in *Thomas* stated that article III can only be applied on the basis of substance rather than form. 105 S.Ct. at 3336. Consequently, where the form of the federal rule of decision may be "federal" under choice of law, but the actual substance of the rule of decision remains that of the state rule, *Northern Pipeline* and *Thomas* require adjudication by an article III tribunal.

The conflict between the rights of Glen Ridge, as a private litigant, and FSLIC, as an agency of the United States, involves the rights of the United States arising under a nationwide federal program and will be governed by a juridical construct to be formally called "federal law". *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *see Deitrick v. Greaney*, 309 U.S. 190, 202, 60 S.Ct. 480, 486, 84 L.Ed. 694 (1940); *D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1943). If this construct will be filled with federal common law specially created to bridge the interstices of FSLIC's enabling legislation, the resulting public

right may be adjudicated by a non-article III body. *Kimbell*, 440 U.S. at 726, 99 S.Ct. at 1457.

When a court must decide whether the federal rule of decision will adopt state law or fashion a nationally uniform federal common-law rule, it must adhere to the analysis of the United States Supreme Court in *Kimbell*, 440 U.S. at 728–730, 99 S.Ct. at 1459. The court must decide whether the federal program in issue requires a nationally uniform body of law to deal with the facts at bar; whether application of state law would frustrate specific objectives of the federal program; and the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. 440 U.S. at 728, 99 S.Ct. at 1458.

■ FSLIC argues that its ability, as receiver, to collect debts owed to the failed savings and loan and thereby recoup the money paid out to depositors by FSLIC, as insurer, is crucial to the national savings and loan industry and, accordingly, requires nationally uniform federal common law. We cannot agree. In *Kimbell*, the government similarly argued that a nationally uniform federal common law was necessary because applying state law to federal lending programs would undermine their ability to recover disbursed funds. 440 U.S. at 733, 99 S.Ct. at 1461. The Supreme Court rejected the government's arguments and adopted state law as the federal rule of decision. 440 U.S. at 733–34, 99 S.Ct. at 1461. Other federal decisions have likewise rejected nationally uniform bodies of laws in favor of application, or adoption, of state law despite the fact that state laws would be inconvenient to, and would cause varying effects upon, the efforts of the United States and its agencies to collect loans, judgments or other debts. *United States v. Yazell*, 382 U.S. 341, 355, 86 S.Ct. 500, 508, 15 L.Ed.2d 404 (1966); *see Royal Indemnity Co. v. United States*, 313 U.S. 289, 296–297, 61 S.Ct. 995, 997–98, 85 L.Ed. 1361 (1941); *Custer v. McCutcheon*, 283 U.S. 514, 519, 51 S.Ct. 530, 531, 75 L.Ed. 1239 (1931); *Fink v. O'Neill*, 106 U.S. 272, 275, 1 S.Ct. 325, 327, 27 L.Ed. 196 (1882);

*United States v. Harpootlian,* 24 F.2d 646, 648 (2d Cir.1982).

The cases in which a nationally uniform body of common law has been crafted concern situations that occur on a day-to-day basis or that involve the intimate workings of federal agencies or instrumentalities. *See, e.g., Deitrick v. Greaney,* 309 U.S. 190, 191, 60 S.Ct. 480, 481, 84 L.Ed. 694 (1940) (insider dealing by officer of national bank in violation of specific provision of National Banking Act); *United States v. Standard Oil of California,* 332 U.S. 301, 302, 305– 306, 67 S.Ct. 1604, 1606–07, 91 L.Ed. 2067 (1947) (subrogation rights of United States for tort injuries to soldier); *United States v. Allegheny County,* 322 U.S. 174, 177, 182–183, 64 S.Ct. 908, 913–14, 88 L.Ed. 1209 (1944) (state taxation of munitions plant during World War II); *Clearfield Trust v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) (issuance of federal government commercial paper).

*International Union (UAW) v. Hoosier Cardinal Corporation,* 383 U.S. 696, 703– 704, 86 S.Ct. 1107, 1111–13, 16 L.Ed.2d 192 (1966), demonstrates the difference in reasoning between the cases cited above and those adopting state law. A nationally uniform body of common law is crafted in those situations where its absence would threaten the functioning of those processes that the federal program is chiefly designed to promote. 383 U.S. at 703, 86 S.Ct. at 1112. Controversies dealing with collective bargaining rights provided by federal labor law in *UAW,* rights on forged endorsements of government paper in *Clearfield Trust,* and purchases of national bank stock by an officer of the bank in *Dietrich* presented issues basic to the function of those processes which the federal program was chiefly designed to promote and required national uniformity.

Where the issue of national uniformity arises in connection with actions which occur only after such processes have broken down, the need for national uniformity is not compelling. *UAW,* 383 U.S. at 704, 86 S.Ct. at 1112. Consequently, issues dealing with recovery of judgments in *Fink*

and the priority of liens on a debtor's property in *Yazell* presented situations outside the basic processes that the federal program was chiefly designed to promote and national uniformity was not compelling.

The dispute in this case does not concern those processes that FSLIC was chiefly designed to promote: payment of insurance to depositors, ordering priorities of third-party creditors, sale of a failed thrift under a purchase and assumption, or liquidation of unchallenged assets of the failed thrift. Instead, it concerns cancelling title to assets claimed by the thrift and preventing FSLIC from exercising Empire's power of foreclosure, which constitute matters outside those processes that are the chief function of FSLIC and situations arising after those processes have broken down. We conclude that a nationally uniform body of federal common law applicable to disputes between FSLIC and debtors of the failed savings and loan concerning the validity of the debt and of the underlying title to assets is not required.

Next, we must determine whether application of state law to disputes between FSLIC and debtors of the failed savings and loan over validity of the debt would frustrate specific legislative objectives. FSLIC argues that a specific objective of Congress was speedy resolution of all claims against the failed thrift because such claims are integral to FSLIC's collection and liquidation of assets. It concludes that subjecting FSLIC to state law on disputed claims would frustrate this objective.

Glen Ridge's claims are calculated to defend its property rights. The effect of defending against FSLIC seizure and sale of assets is fundamentally different from the effect of litigation regarding more basic FSLIC functions. Insurance payments to depositors are not based on the collectibility of the thrift's assets. Sale of unchallenged assets will proceed despite the disposition of the challenged assets. Even though the purchase price of a sale and assumption may need to be adjusted, because of the ongoing litigation, the sale of the majority of the other items may proceed. Finally, the claims of third party

creditors can be satisfied from assets not subject to dispute and augmented later should FSLIC prevail. Of course, if the challenge is meritorious, the asset will not have been subject to distribution and no function of FSLIC will have been impeded. Without some evidence of the proliferation of such claims, we cannot hold that claims of fraud in the initial transaction are sufficiently common that they will so impede FSLIC liquidations as to frustrate legislative objectives. The delay incident to adjudication under state law will tend to support application of a uniform federal rule, but will not be dispositive of the issue because it is outweighed by the state's interests in preserving the integrity of its real property laws.

The final part of the *Kimbell* analysis requires us to consider the extent to which creation and application of a nationally uniform federal rule would disrupt commercial relationships predicated upon state laws. The basic dispute concerns the right of FSLIC to foreclose on real property and the right of Glen Ridge to defeat such foreclosure under various Texas real property laws. In determining whether to adopt state law as the federal rule of decision, a court must have due regard for local interest in control over local real property, recognize that real property law is an area uniquely within the province of the state, and give special consideration to state real property law. *Reconstruction Finance Corporation v. Beaver County,* 328 U.S. 204, 210, 66 S.Ct. 992, 995, 90 L.Ed. 1172 (1946); *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 155, 64 S.Ct. 474, 480, 88 L.Ed. 635 (1944); *Board of Commissioners v. United States,* 308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939); *Sunderland v. United States,* 226 U.S. 226, 232–233, 45 S.Ct. 64, 65, 69 L.Ed. 259 (1924).

The state-created rights upon which Glen Ridge sues are designed to promote hones-ty and performance of obligations in real estate transactions and to assure that real property interests are protected against dishonesty and nonperformance of obligations. Participants in such transactions expect and rely upon these rights. If a nationally uniform federal rule of decision is applied to strip these parties of the benefit of laws carefully crafted for their protection by replacing them with federal rules crafted for the benefit of the FSLIC, commercial relationships in Texas would be severely disrupted.[2] We conclude that the convenience to FSLIC of a uniform rule is outweighed by the disruption of commercial relationships that would occur if a uniform federal rule of decision supplanted state common law.

SECTION 1730(k)(1) DOES NOT
REQUIRE FEDERAL
COMMON LAW

█ FSLIC contends that, regardless of whether the *Kimbell* analysis requires a nationally uniform federal law, section 1730(k)(1) provides an independent foundation upon which an edifice of federal common law should be erected. Section 1730(k)(1) provides:

> (A)ny civil action, suit, or proceeding to which the Corporation shall be a party shall be *deemed to arise under the laws of the United States,* and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy....

[Emphasis added.]

Citing *D'Oench, Duhme and Co., Inc.,* FSLIC argues that this "arising under" language means that federal law necessarily supplies the rule of decision. If so, a non-article III body may adjudicate. We do not agree because this language is jurisdictional and not a source for creation of federal common law.

"Arising under" is one of several distinct classes of the jurisdiction described in Arti-

---

**2.** Experience indicates that creation of federal common law would invariably be crafted to the benefit of FSLIC, "(T)here is no need to decide whether we would adopt state law or fashion a uniform federal standard where the state law indicates a result *less favorable to the FDIC* that the result indicated here." *Federal Deposit Insurance Corporation v. Lattimore Land Corporation,* 656 F.2d 139 (5th Cir., 1981). *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 457, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942); *FDIC v. First National Company,* 587 F.2d 1009 (9th Cir.1978).

cle III, Section 2, clause 1 of the Constitution. *Chase Manhattan Bank v. South Acres Development Company*, 434 U.S. 236, 237, 98 S.Ct. 544, 545, 54 L.Ed.2d 501 (1978). Section 1730(k)(1) was intended to confer that class of jurisdiction upon federal district courts for all suits involving the federal agency, whether based on the express terms of its legislation or not. *Hancock Financial Corporation v. Federal Savings and Loan Insurance Corporation*, 492 F.2d 1325, 1328 (9th Cir.1974) (1730(k)(1) was intended as a grant of original jurisdiction to district courts); *see DeVilbiss v. Small Business Administration*, 661 F.2d 716, 718 (8th Cir.1981) (similar language of 28 U.S.C. § 1331 is "merely jurisdictional.")

In *D'Oench*, the enabling legislation of FDIC included a provision identical to 1730(k)(1) which stated that "[a]ll suits to which the Corporation shall be a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 264(j). The concurring opinion in *D'Oench* argued that section 264(j) was not merely jurisdictional and that the Court should decide whether that section freed the federal in all FDIC litigation to "make its own law from materials found in the common law," 315 U.S. at 468, 62 S.Ct. at 684. The majority in *D'Oench* declined to hold that this section alone was a sufficient basis for creation of federal common law. 315 U.S. 455–456, 62 S.Ct. at 678–79. We conclude from *D'Oench* that statutes such as § 1730(k)(1) merely confers jurisdiction and does not mandate that federal common law be created for every suit involving the administrative agency. Consequently, § 1730(k)(1) does not dictate that this case must be governed by a uniform body of federal common law and provides no independent basis for exclusive FSLIC jurisdiction.

## WAIVER OF SOVEREIGN IMMUNITY DOES NOT CREATE PUBLIC RIGHTS

 Next, FSLIC contends that this suit may be adjudicated by an administrative agency because it concerns public rights created when Congress waived sovereign immunity and allowed Glen Ridge to proceed against FSLIC. In this respect,

FSLIC asserts that it inherently possesses sovereign immunity which would prohibit Glen Ridge's suit and, therefore, when Congress waived this immunity, it created a public right which Glen Ridge now asserts. We do not agree.

 Waiver of sovereign immunity is purely a procedural matter and is entirely distinct from the extent of the sovereign's liability. *United States v. Mitchell*, 445 U.S. 535, 540, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980); *Boyer v. Chaloux*, 288 F.Supp. 366, 370 (N.D.N.Y., 1968); *University of Kentucky v. Guynn*, 372 S.W.2d 414, 416 (Ky.1963); *Berger v. State of Connecticut*, 130 S.2d 293, 295 (Conn.1957); *Commercial Standard Fire and Marine Co. v. Commissioner of Insurance*, 429 S.W.2d 930, 935 (Tex.Civ.App.—Austin 1968, no writ); *Nueces County, Texas v. The Nellie B.*, 174 F.Supp. 846, 850 (S.D. Tex.1959); and *City of Newark v. United States*, 149 F.Supp. 917 (D.N.J., 1957). After the sovereign has consented to be sued, its liability is based on the substantive law applied to private citizens. *City of Newark*, 174 F.Supp. at 921.

Glen Ridge defends against FSLIC foreclosure upon principles of the substantive law of Texas. The mere waiver of sovereign immunity by Congress does not alter these principles. Accordingly, the rights of Glen Ridge are not thereby made public rights. An article III court must adjudicate these private rights.

## CONDITIONS OF WAIVER OF IMMUNITY MAY BE UNCONSTITUTIONAL

FSLIC also claims that this case involves public rights because of the conditions on the waiver of sovereign immunity. The plurality in *Northern Pipeline* acknowledged that the public rights doctrine "may be explained in part by reference to the traditional principle of sovereign immunity, which recognizes that the government may attach conditions to its consent to be sued". 458 U.S. at 67, 102 S.Ct. at 2869. FSLIC reads this to mean that the conditions themselves are public rights which may be

adjudicated by an administrative agency rather than an article III court.

FSLIC asserts that the prohibition of section 1464(d)(6)(C) that "no court may ... restrain or affect the exercise of powers or functions of a ... receiver" is a condition upon the waiver of sovereign immunity expressed in section 1725(c)(4). Because Congress may permissibly attach conditions to its waiver of sovereign immunity, FSLIC concludes that the condition in 1464(d)(6)(C) converts Glen Ridge's state common-law rights into public rights. Because the condition is itself unconstitutional, we cannot agree.

 No act of congress can authorize a violation of the federal constitution. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). As stated in *Williams v. Rhodes,* 393 U.S. 23, 29, 89 S.Ct. 5, 9, 21 L.Ed.2d 24 (1968):

> (T)he Constitution is filled with provisions that grant Congress ... specific power to legislate in certain areas; these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution.

This rule applies even in areas where legislative action is ordinarily conclusive. *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 50–52, 56 S.Ct. 720, 725–26, 80 L.Ed. 1033 (1936), *Almedia-Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). Furthermore, what the Constitution prohibits by express statutory action cannot be achieved by indirection. *Anderson v. Martin,* 375 U.S. 399, 404, 84 S.Ct. 454, 456, 11 L.Ed.2d 430 (1964).

 Article III prohibits Congress from removing jurisdiction of Glen Ridge's state common law causes of action from article III courts and placing them in FSLIC. Even though Congress' determination of what conditions to attach to its waiver of sovereign immunity would ordinarily be conclusive, Congress may not indirectly avoid the effect of article III by purporting to authorize a constitutional violation as a condition to a waiver of sovereign immunity.

## FSLIC IS NOT AN ADJUNCT TO AN ARTICLE III COURT

The final contention by FSLIC is that it is an adjunct to an article III court. Accordingly, it maintains that it may properly assume jurisdiction over Glen Ridge's claims. We cannot agree.

 A non-article III body may adjudicate cases falling within the judicial power of the United States if it is a properly constituted adjunct to an article III court. *Northern Pipeline,* 458 U.S. at 81–85, 102 S.Ct. at 2876–79; *United States v. Raddatz,* 447 U.S. at 683; *Crowell,* 285 U.S. at 51–57, 52 S.Ct. at 292–94. The basic question is whether the relationship betweenthe two bodies preserves the essential attributes of the judicial power within the article III tribunal, and administrative agency adjudication is permissible where the article III court retains sufficient control. *Northern Pipeline,* 458 U.S. at 77 and 79, 102 S.Ct. at 2874–75.

 The classic example of an adjunct is that of the magistrates created by the Federal Magistrates Act, which passes article III scrutiny because:

> (1) the magistrates are appointed and removed by article III judges;
>
> (2) magistrate positions are created by the article III judiciary;
>
> (3) cases are referred to a magistrate by an article III judge to whom the magistrate is an adjunct;
>
> (4) the reference may be cancelled at any time by the article III judge;
>
> (5) reference to a magistrate may only be made with the uncoerced consent of the parties to the lawsuit;
>
> (6) the contempt power is retained in the article III judge; and
>
> (7) the article III court provides appellate review.

*Wimmer v. Cook,* 774 F.2d 68, 73–74 (4th Cir.1985); *Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1284–1285 (4th Cir.1985); *Pacemaker Diagnostic Clinic v. Instrome-*

*dix, Inc.,* 725 F.2d 537, 542–547 (9th Cir. 1984); *Goldstein v. Kelleher,* 728 F.2d 32, 35–36 (1st Cir.1984); *Collins v. Foreman,* 729 F.2d 108, 113–115 (2d Cir.1984); *Lehman Bros. Kuhn, Loeb, Incorporated v. Clark Oil and Refining Corporation,* 739 F.2d 1313, 1315–1316 (8th Cir.1984); *Puryear v. Ed's Ltd.,* 731 F.2d 1153, 1154 (5th Cir.1984); *Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1040–1045 (7th Cir.1984); *Fields v. Washington Metropolitan Area Transit Authority,* 743 F.2d 890, 893–894 (D.C.Cir.1984); and *Wharton Thomas v. United States,* 721 F.2d 922, 929–930 (3d Cir.1983). FSLIC possesses only two of these criteria: it lacks the power to punish by contempt[3] and its determination is reviewed by an article III court. As to all five of the remaining criteria, FSLIC fails the test of adjunct status.

Congress created a different type of adjunct in the United States Employees' Compensation Commission. This Commission administers a system similar to that of worker's compensation, which replaced the traditional negligence action of admiralty law. 33 U.S.C. §§ 901–950.

The Supreme Court in *Crowell* held that article III imposed no obstacle to this system because:

(1) the administrative agency made only specialized, narrowly confined factual determinations regarding a particularized area of law;

(2) the agency possessed only a limited power to issue compensation orders which could only be enforced by the district court;

(3) the agency was required by law to seek enforcement of its compensation orders in the district court; and

(4) Congress created the rights in issue by replacing the seaman's traditional negligence action for traditional damages, with a statutory strict liability action for statutory damages.

*Crowell,* 285 U.S. at 37–38, 43–45, 52 S.Ct. at 287, 289–90; *Northern Pipeline,* 458

U.S. at 78, 85–86, 102 S.Ct. at 2878–79. The first and fourth criteria also underlay the decision in *Thomas,* 105 S.Ct. at 3329, 3337–3339. Thus, FSLIC contends that it qualifies for adjunct status under each of these criteria. We do not agree.

FSLIC adjudication of Glen Ridge's causes of action would not involve narrow, specialized subject matter but rather a broad series of extensive, complicated financial and real estate transactions that may implicate broad areas of fraud, contract, real estate, and financial law. Consequently, FSLIC fails the first test of adjunct status under the *Crowell/Northern Pipeline* analysis.

Further, allowing FSLIC to adjudicate Glen Ridge's claims with no interference or restraint from any court makes FSLIC determinations equivalent to final judgments rather than limited orders enforceable only by the district court. There is no provision among the FSLIC statutes requiring FSLIC to seek enforcement of any orders in district court. Thus, FSLIC fails the second and third prongs of the *Crowell/Northern Pipeline* analysis.

Likewise, the fourth criterion of this analysis refutes FSLIC's claim to adjunct status. In contrast tos the legislation at issue in *Crowell* and *Thomas,* neither federal banking legislation nor FHLBB regulations specifically create rights in either FSLIC or Glen Ridge with respect to the deeds of trust or any causes of action connected therewith. *Cf.* 12 U.S.C. § 1464; 12 C.F.R. § 569(a)(6).

Because FSLIC meets only one of seven criteria of the Magistrate Act cases and fails each of the criteria of the *Crowell/Northern Pipeline* test, it is not a properly constituted adjunct to an article III court. Consequently, it may not constitutionally adjudicate Glen Ridge's claims.

We hold that the grant of jurisdiction to FSLIC to adjudicate Glen Ridge's state law claims is unconstitutional because it violates article III of the Constitution of the

---

**3.** 12 C.F.R. Part 509 confers power to issue subpoenas but does not specifically grant the power to enforce such subpoenas by contempt.

United States. Consequently, the trial court may exercise jurisdiction over these causes of action. However, with respect to the causes of action under federal securities laws and those aimed at actions of FSLIC as receiver, i.e. for disparagement of title and violation of state foreclosure laws, which are constitutionally within the authority of FSLIC, the trial court's judgment is affirmed. Accordingly, we remand to the trial court for trial of the state law causes of action only.

REVERSED and REMANDED in part and AFFIRMED in part.

Before DEVANY, LAGARDE and THOMAS [1], JJ.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

DEVANY, Justice.

Federal Savings and Loan Insurance Corporation (FSLIC) contends that our previous opinion is in error (1) in failing to apply the analysis mandated by the most recent decision of the Supreme Court of the United States regarding Article III concerns, (2) in failing to require exhaustion of administrative remedies as a condition to the appeal of Glen Ridge I Condominiums, et al. (Glen Ridge), and (3) in failing to construe the applicable statutes in such a manner as to avoid constitutional issues. FSLIC concludes that had we applied this analysis, required such a condition, or made such a construction, we would be compelled to dismiss Glen Ridge's appeal or affirm the trial court's dismissal of Glen Ridge's suit. Because this analysis supports our original decision, because the doctrine of exhaustion of administrative remedies is inapplicable, and because the statutes are susceptible to no other construction, we cannot agree. Consequently, FSLIC's motion for rehearing is denied.

FSLIC claims that resolution of this case depends upon evaluation of a set of factors derived from the most recent decision of the Supreme Court considering adjudication of certain causes of action by non-article III tribunals, *Commodity Futures Trading Commission v. Schor*, —— U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). FSLIC argues that our original opinion failed to consider these factors and that, when all such factors are weighed and considered together, FSLIC's adjudication of Glen Ridge's causes of action cannot be said to violate Article III of the Constitution of the United States of America. We agree that the *Schor* analysis aids in the disposition of this case, but we conclude that such analysis supports our original decision.

The question presented in *Schor* was whether the Commodity Exchange Act (CEA), 7 U.S.C. § 1, et seq., empowered the Commodity Futures Trading Commission (CFTC) to entertain state law counterclaims in CEA reparation proceedings and, if so, whether that grant of authority violated Article III of the Constitution. The CEA created a comprehensive regulatory structure to prevent fraudulent and manipulative conduct in the futures trading industry. As part of such structure, CFTC administers a reparations procedure through which disgruntled customers of professional commodity brokers can seek redress for the brokers' violation of the CEA or CFTC regulations. CFTC promulgated a regulation allowing the respondent in a reparations proceeding to present counterclaims arising out of the transaction or occurrence described in the complaint.

Schor filed complaints with the CFTC, alleging that ContiCommodity Services, Inc. (Conti) had run up an account debit against Schor through violations of CFTC regulations. Conti, before being served, commenced a diversity action in Federal District Court to recover the balance due on Schor's account. Schor moved to dismiss the federal district court action on grounds that the CFTC reparation proceed-

---

1. The majority opinion of this court on December 30, 1986 was authored by the Honorable Ted M. Akin, Justice, now retired. Another member of the panel was The Honorable R.T. Scales, Justice, who is also now retired. Presid-

ing Justice Devany has been joined by the successors of both retired Justices in this Supplemental Opinion to update our opinion because of recent case law.

ing afforded full resolution and adjudication of all rights of the parties with respect to the transactions which were the subject matter of Conti's suit. Conti thereupon dismissed its suit and filed a CFTC counterclaim for the debit balance. Conti alleged that it had not violated the CEA but that Schor's debit balance resulted from losses sustained by Schor's trading and from the expenses, including brokerage commissions, incurred in connection with such trading. The CFTC Administrative Law Judge ruled in Conti's favor on both Schor's claims and Conti's counterclaims. After such ruling, Schor raised for the first time the issue of CFTC's statutory authority to adjudicate Conti's counterclaim. The Court of Appeals ordered dismissal of the counterclaims on grounds that CFTC jurisdiction over such claims violated article III as applied in *Northern Pipeline Construction Co. v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The Supreme Court evaluated the Court of Appeals decision by considering several factors, none of which is considered dispositive. These factors were: (1) whether the litigant asserting article III issues had waived his right to an article III tribunal; (2) the extent to which the non-article III body exercised the range of jurisdiction and powers normally vested only in article III courts; (3) the extent of judicial review of the non-article III tribunal; (4) the balance to be struck between the "private", state-law aspects of the litigant's claim and the ability of the non-article III body to achieve its legislative purpose; and (5) whether submission to the non-article III forum is optional on the part of the litigant asserting a state law counterclaim. After evaluation of these factors, the Court held that article III was not offended by the CFTC adjudicatory scheme. However, application of these factors to the case at bar convinces us that FSLIC's claims of exclusive jurisdiction do offend the basic principles of article III and are, therefore, unconstitutional.

First, the Court stated that, inasmuch as article III serves primarily to protect individual and personal interests in having claims decided before article III judges who are free from potential domination by other branches of government, the concept of waiver is a significant factor in determining whether or not article III requires adjudication of a claim by article III courts. 106 S.Ct. 3256. Schor's express demand that Conti's district court suit be dismissed and that Conti proceed on its counterclaim in the CFTC reparations proceeding constituted such a waiver. This waiver served to uphold the propriety of CFTC jurisdiction over Conti's counterclaims. In contrast, Glen Ridge has vigorously challenged FSLIC adjudication of Glen Ridge's counterclaims. Therefore, the initial *Schor* factor supports our original decision in this case.

Next, the Court examined the allocation of powers between CFTC and article III courts. The Court noted that only CFTC's jurisdiction over common law counterclaims departs from the traditional agency model. 106 S.Ct. 3258. The Court further noted that "wholesale importation of concepts of pendent or ancillary jurisdiction ... may create greater constitutional difficulties ..." than those presented by CFTC's narrow jurisdiction. *Id.* FSLIC argues that this court must dismiss Glen Ridge's appeal because, literally, its enabling act "precludes *any court action*, in either state or federal court, that would restrain or affect the exercise of the powers or functions of FSLIC ..." (emphasis added), and because such legislation absolutely proscribes judicial enforcement of any of the various causes of actions alleged by Glen Ridge because such judgments would restrain or affect FSLIC's actions.

Section 1464 has been applied broadly and literally to proscribe any judicial action over FSLIC whatsoever, save for the limited review under the Federal Administrative Procedure Act. *Federal Savings and Loan Insurance Corporation v. Bonfanti*, 818 F.2d 864 (5th Cir.1987) (unpublished); *Chupik Corporation v. Federal Savings and Loan Insurance Corporation*, 790 F.2d 1269 (5th Cir.1986). Clearly, if FSLIC may take whatever actions it decides upon with regard to a litigant's claim and no

court anywhere may take the slightest action with regard thereto, FSLIC has usurped *all* the functions of article III courts. It says nothing to claim that FSLIC does not exercise the range of powers and jurisdiction of an article III court because it does not conduct jury trials or issue "judgments" if the harsh reality is that FSLIC adjudication completely replaces the right to trial by jury and the ability of the courts to issue a judgment. Under the construction urged by FSLIC, it would have far more powers than an article III court because it can act as plaintiff, judge, and jury in deciding a litigant's claims. To claim otherwise is to adopt the formalism rejected by the Supreme Court in *Thomas* and *Schor.* Clearly, the construction of 12 U.S.C. §§ 1729 and 1464 offered by FSLIC bears no resemblance to the limited authority of CFTC to entertain voluntary counterclaims arising out of the transaction from which the reparation proceeding grew. Instead, this position argues in favor of the very wholesale importation of concepts of pendent or ancillary jurisdiction of which the *Schor* court warned. Therefore, the second factor in *Schor* supports our original decision.

Next, the *Schor* court examined the extent of review of CFTC provided by the federal courts, finding that CFTC's jurisdiction was not objectionable because subject to "de novo" review in federal court rather than deferential review under the "weight of the evidence" standard. FSLIC contends that it is subject to review under the "de novo" rather than the "weight of the evidence" standard. According to the federal Administrative Procedure Act, FSLIC is not subject to "de novo" review or to the more deferential "weight of the evidence" standard but review of FSLIC is under the most deferential "arbitrary and capricious" or "substantial evidence" standards. 5 U.S.C. §§ 554(a), 706(2)(E); *Morrison-Knudsen Co., Inc. v. CHG International, Inc.,* 811 F.2d 1209, 1222 (9th Cir. 1987). Consequently, the third prong of the *Schor* test supports our original decision.

Next, the *Schor* court balanced the "private" aspect of the right there in issue against the congressional policies vindicated by the grant of jurisdiction to a non-article III tribunal. An important consideration in striking this balance was whether or not the non-article III body's jurisdiction was optional with the litigant. In *Schor,* as here, the right in issue was a private, common law right derived from state law. 106 S.Ct. at 3259. The Court described the proper analysis by stating:

> The counterclaim ... is therefore a claim of the kind assumed to be at the "core" of matters normally reserved to Article III courts.... The risk that Congress may improperly have encroached on the federal judiciary is obviously magnified when Congress "withdraw(s) from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity ..." ... (W)here private, common law rights are at stake, our examination of the congressional attempt to control the manner in which those rights are adjudicated has been searching ...

*Id.* The Court then recognized the propriety of Congress' purpose in affording an expeditious procedure for CEA disputes. The Court concluded that, in the *Schor* situation, separation of powers concerns underlying article III are not offended because:

> Congress gave the CFTC the authority to adjudicate ... but the decision to invoke this forum is left entirely to the parties and the power of the federal judiciary to take jurisdiction of these matters is unaffected.

*Id.* The balance between a litigant's right to article III adjudication of a state-law cause of action and the interest of Congress in an expeditious remedy was tipped in favor of the administrative agency by the consensual nature of the remedy and the fact that no jurisdiction was withdrawn from the courts. Clearly, the *Schor* analysis does not uphold the constitutionality of a scheme wherein the parties are compelled to abide FSLIC adjudication and where judicial power is not only affected, but where, in addition, *no court* can take *any action* to affect the administrative agency.

Since FSLIC claims the authority to adjudicate those matters which reside at the core of judicial power, and claims to have power to compel parties to accept FSLIC adjudication, and claims to be able to oust any court from any jurisdiction over FSLIC, our searching examination of this statutory scheme compels us to hold that the jurisdiction claimed by FSLIC, and granted by 12 U.S.C. §§ 1464 and 1729, violates article III of the Constitution of the United States.

 FSLIC further contends that we erred in not dismissing Glen Ridge's appeal for failure to exhaust administrative remedies. However, the doctrine of exhaustion of remedies is not a jurisdictional rule but is a matter committed to judicial discretion and an exercise of comity only. *Morrison-Knudsen*, 811 F.2d at 1223. Further, where the presence of constitutional questions is coupled with the inadequacy of administrative procedures, a reviewing court may dispense with such doctrine. *Aircraft & Diesel Equipment Corporation v. Hirsch*, 331 U.S. 752, 773, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947). As detailed in our original opinion, there are serious constitutional questions in this case and FSLIC's procedures are patently inadequate. Consequently, Glen Ridge's appeal is properly before us.

FSLIC further argues that our original opinion should have avoided the constitutional question by construing the FSLIC enabling statutes in such a manner as to hold them constitutional. We are aware that the United States Court of Appeals for the Ninth Circuit has construed these acts in a manner that avoids a constitutional issue by simply ruling that the acts do not contemplate FSLIC jurisdiction over state law counterclaims. *Morrison-Knudsen Co., Inc., et al. v. CHG International, Inc., et al.*, 811 F.2d 1209 (9th Cir.1987). We respect the reasoning of the Ninth Circuit Court, but in light of the literal construction of 12 U.S.C. §§ 1464 and 1729 given by the United States Court of Appeals for the Fifth Circuit, and numerous United States District Court decisions following it, we cannot strain the language of the acts that far. *North Mississippi Savings and Loan Association v. Hudspeth*,

756 F.2d 1096 (5th Cir.1985); *Chupik Corporation v. Federal Savings and Loan Insurance Corporation*, 790 F.2d 1269 (5th Cir.1986); *Federal Savings and Loan Insurance Corporation v. Bonfanti*, 818 F.2d 864 (5th Cir.1987) (unpublished). Similarly, in *Schor*, the Supreme Court was asked to uphold the opinion of the Court of Appeals that CFTC enabling statutes could be construed to deny them authority over counterclaims under the rubric of avoiding questions of constitutionality where a particular statutory construction may avoid them. *Schor*, 106 S.Ct. at 3252. The Court rejected this reasoning because, though a court will strain to construe a statute so as to avoid a constitutional issue, it will not judicially rewrite the statute to do so. *Id.* The unvarnished language of §§ 1729 and 1464, and the prevailing construction of those statutes, are too plain to support a construction that will avoid their constitutional infirmity. Thus, we must address that issue.

The motion for rehearing is overruled.